IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONZELL TURNER | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  24-939 |
| | : | |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY | : : | |

# ORDER

**AND NOW**, this 14th day of August 2024, upon considering plaintiff's motion to remand (DI 6), defendant's opposition (DI 14), plaintiff's reply (DI 17), defendant's motion to dismiss (DI 18), plaintiff's opposition (DI 21), defendant's reply (DI 22), and following oral argument held with counsel on August 13, 2024, it is **ORDERED**:

1. For the reasons discussed below, plaintiff's motion to remand (DI 6) is **GRANTED**.  This matter is **remanded** to the Court of Common Pleas of Philadelphia County for further proceedings.

2. Defendant's motion to dismiss (DI 18) is **DENIED as moot**.

3. The Clerk of Court shall **close** this case.

4. This case was removed from the Court of Common Pleas of Philadelphia County. DI 1.  The purported basis for jurisdiction in this case is the Class Action Fairness Act (CAFA), which requires, among other things, an aggregate amount in controversy of at least $5,000,000. 28 U.S.C. § 1332(d)(2).  In the amended complaint, Mr. Turner dropped any claim for damages and seeks only a declaration of uninsured and underinsured motorist coverage for him and other proposed class members.  DI 12.

5. It is Progressive's burden to establish the amount in controversy. *Federico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).  Mr. Turner argues that the amount is zero

because he seeks only declaratory relief, but the Third Circuit has held that a court must consider "the value of the object of the litigation." *Auto-Owners Insurance Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

6. Progressive submitted two declarations and accompanying argument intended to show the potential value if Mr. Turner's legal theory about the nature of the insurance policies at issue is successful. DI 14. Mr. Turner does not offer a critique of the analysis, but we must exercise our own judgment when evaluating subject matter jurisdiction. In our view, Progressive's showing as to the value of the object of Mr. Turner's litigation does not meet its burden to establish the $5,000,000 in controversy to a reasonable degree of certainty.

7. Mr. Turner's theory is that in 2014, Progressive undertook to change certain of its insurance policies. DI 12 ¶ 5. According to Mr. Turner, if that change were deemed a new policy, then Progressive was obliged to obtain new waivers and elections under Pennsylvania law. *Id.* Progressive's failure to do so would then benefit Mr. Turner and others like him, because they would be eligible for uninsured and underinsured motorist insurance. *Id.*

8. Presumably the value of the object of this litigation has something to do with how many Progressive insureds are in the same situation as Mr. Turner — they had a policy that was revised in the alleged way, did not receive elections and waivers, ultimately did not have UM/UIM coverage, then got in an accident where a UM/UIM claim could have been properly made with Progressive but was not, and then were harmed as a result. Progressive admits that it "cannot identify all claims in which a claim for UM/UIM coverage was denied based on a signed waiver or election" but undertakes to estimate how many such individuals there might be

2

and the value of their claims.  DI 14.

9.     During oral argument, we discussed Progressive's analysis at length. Importantly, it was unclear how Progressive determined how many policyholders might be in the same situation as Mr. Turner.  Progressive appears to be assuming that anyone who held a policy in 2014 and 2020 without UM/UIM insurance would be affected (some 7,800 or 10,000 policies depending on how it's sliced), but there is no record basis for that assumption.  DI 14 at 7.  What is missing is which of those policies experienced the same revision that Mr. Turner is concerned about, or some reason to conclude that all of them would have?  The record lacks a clear answer to that question.

10.    Furthermore, we agree with Mr. Turner that the focus is on whatever UM/UIM benefits should have been paid but were not.  Progressive addresses that, estimating a claim frequency rate of 15%.  DI 14 at 10.  But we do not see a firm basis to apply the 15% rate (which was, of course, derived from policies that **had** UM/UIM insurance) to the pool of policies relevant to this case.  Progressive argues that the 15% is a reasonable estimate without explaining persuasively why that would be the case.  DI 14 at 10-11.  *See also Lohr v. United Fin. Cas. Co*, 2009 WL 2634202, at *7 (W.D. Pa. Aug. 25, 2009) (relying on "unsupported assumptions" and speculation does not satisfy defendant's burden).

11.    Mr. Turner also argues that even if there were jurisdiction under CAFA, we should exercise our discretion to "abstain from hearing [this] declaratory judgment action that is properly within the court's subject matter jurisdiction." *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021).  We agree, albeit for a different reason than Mr. Turner urges.

12.  "[W]hen applicable state law is uncertain or undetermined, district courts should be particularly reluctant to exercise DJA jurisdiction.  Further, the fact that district courts are limited to predicting — rather than establishing — state law requires serious consideration and is especially important in insurance coverage cases." *Id.* at 197 (cleaned up) (quoting *State Auto Insurance Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000)).  At oral argument, Mr. Turner suggested that in this case, the applicable state law is neither uncertain nor undetermined, but we disagree.  Mr. Turner's case depends upon how a court would view Progressive's 2014 auto policy rewrite — as a new policy or a renewal policy.  Neither party has identified any clear guidance from Pennsylvania courts on this insurance coverage issue, and none is readily apparent.  Thus, even if there were CAFA jurisdiction, we would exercise our discretion to decline DJA jurisdiction in this case.

*[signature]*
**MURPHY, J.**